## THE HOPE INSURANCE COMPANY OF PROVIDENCE v. BOARDMAN ET AL.

—

ERROR to the circuit court for the district of Rhode Island, in an action upon a policy of insurance.

The only question decided in this court was that relative to the jurisdiction of the courts of the United States.

The parties were described in the declaration as follows: " *William Henderson Boardman, and Pascal Paoli Pope, both* of Boston, in the district of Massachusetts, merchants and *citizens of the State of Massachusetts*, complain of *The Hope Insurance Company of Providence, a company legally incorporated by the legislature of the State of Rhode Island and Providence Plantations, and established at Providence in said district.*"

YEATON
v
THE BANK
&c.

A corporation aggregate cannot be a citizen —and cannot litigate in the courts of the United States, unless in consequence of the character of the individuals who compose the body politic, which character must appear by proper averments upon the record.

HOPE INS.
Co. &c.
v.
BOARDMAN.

The question of jurisdiction was not made in the court below.

*Ingersoll*, for the plaintiffs in error, contended, that the jurisdiction must appear upon the face of the proceedings, according to the decision in the case of *Bingham* v. *Cabot*, 3 *Dal.* 382. And that it does not appear upon this record that the parties are citizens of different states ; a corporation aggregate cannot be a *citizen of any state;* and here is no averment of citizenship of the individuals who compose the corporation.

*Adams,* contra.

The whole argument against us depends upon the single case of *Bingham* v. *Cabot;* for although in other cases the same point has been decided, yet the subsequent decisions are all founded upon that case. The effect of that decision has been to exclude many cases upon nice questions of pleading, which would otherwise have been clearly within the jurisdiction of the courts of the United States. No exception was taken to the jurisdiction in the court below; and this court would not willingly turn us out of court, after encountering all the risk, expense, delay and labour of a jury trial, upon an exception, which, if taken in the first instance, might have prevented all that risk, expense, and delay. In the case of *Abercrombie* v. *Dupuis*, (*ante, vol.* 1. *p.* 343.) the present Chief Justice (*Marshall*) intimated a doubt how the question would then have been decided if it were a new case, and. if the court was not bound by the case of *Bingham* v *Cabot.* This doubt shows that the court was not then inclined to extend the principle farther than that case warrants. At the time the court decided the case of *Bingham* v. *Cabot,* the jurisdiction of the courts of the United States was an object of jealousy, and there was probably a desire on the part of the court to remove all ground of suspicion, by deciding doubtful cases against the jurisdiction. This circumstance probably induced them to be over scrupulous upon that

subject. But it is as much the duty of this court to exercise jurisdiction in cases where it is given by the constitution and laws of the United States, as to refuse to assume it where it is not given.

The person who drew the declaration in the present case seems to have been aware of the decision in the case of Bingham v. Cabot, and to have intended to describe the parties in such a manner as to give the court jurisdiction. The defendant is described as "*a company legally incorporated by the legislature of the State of Rhode Island and Providence Plantations, and established at Providence in the said district.*"

The term *citizen* could not with propriety be applied to a corporation aggregate. It could only be a citizen by *intendment of law*. It is only a moral person; but it may be a citizen *quoad hoc, i. e.* in the sense in which the term *citizen* is used in that part of the constitution which speaks of the jurisdiction of the judicial power of the United States. The term is indeterminate in its signification. It has different meanings in different parts of the constitution. When it says " the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," the term *citizens* has a meaning different from that in which it is used in describing the jurisdiction of the courts.

To say that all the individual members of a body corporate must be citizens of a certain description, destroys the idea of a body politic. It is the body politic, the moral person, that sues; and not the individuals who compose the corporation. Its powers, its duties and capacities are different from those of the individuals of whom it is composed. It can neither derive benefit from the privileges, nor suffer injury by the incapacities, of any of those individuals.

Thus the infancy of any or even of all the members of a body corporate does not affect the validity of its acts. Nor does the alienage of the members

prevent the body politic from holding lands. A majority of the members of the bank of the United States are aliens.

The objection goes to exclude all corporations aggregate from the federal courts. For if a corporation cannot be a citizen it cannot be an alien. And as the individual members are constantly changing by the transfer of stock, it is impossible to ascertain at any precise moment who are the individuals who constitute the corporate body; and it would at any time be in the power of a corporation defendant to evade the jurisdiction of the court, by taking in a new member who should be of the same state with the plaintiff.

At all events it is an objection which ought to be pleaded in abatement according to the course of the common law, so that the plaintiff may have a better declaration; and by that means much expense, time and labour would be saved.

The reason of giving jurisdiction to the courts of the United States in cases between citizens of different states, applies with the greatest force to the case of a powerful moneyed corporation erected within, and under the laws of a particular state. If there was a probability that an individual citizen of a state could influence the state courts in his favour, how much stronger is the probability that they could be influenced in favour of a powerful moneyed institution which might be composed of the most influential characters in the state. What chance for justice could a plaintiff have against such a powerful association in the courts of a small state whose judges perhaps were annually elected, or held their offices at the will of the legislature?

If the jurisdiction of the federal courts is limited by the letter of the constitution, they have no jurisdiction in a case between a citizen of one state and a citizen of another state; because the constitution speaks of *citizens*, in the plural, so that there must

be more than one plaintiff, and more than one de-
fendant. So also there could be no jurisdiction if
one of the parties was a woman, because a woman
cannot be a *citizen;* which is a term applicable only
to a *male.*

Hope Ins.<br>Co. &c.<br>v.<br>Boardman.

It is not necessary that a person should be a *citizen*
to commit treason: it may be committed by an alien.

*Judge Jay,* as an argument in favour of the *sua-
bility* of the states, urged that a corporation could
undoubtedly be sued in the courts of the United
States.*

THE COURT having, in the case of *The Bank of the
United States* v. *Deveaux et al.* decided that the right
of a corporation to litigate in the courts of the
United States depended upon the character (as to
citizenship) of the members which compose the
body corporate, and that a body corporate as such
cannot be a citizen, within the meaning of the con-
stitution, *reversed the judgment,* for want of ju-
risdiction in the court below.

* A similar question of jurisdiction being involved in the case of *The
Bank of the United States* v *Deveaux et al.*, and the counsel in that
case expressing a wish to be heard before this case should be decided,
the court agreed to hear both cases at the same time; the further
arguments in this case were consequently blended with those in the
other.